# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

BORDER STATES INDUSTRIES, INC.,

                Plaintiff,

    v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES and UR M.
JADDOU, Director, United States
Citizenship and Immigration Services,

                Defendant.

Case No. _____

**COMPLAINT**

## INTRODUCTION

1.     Plaintiff Border States Industries, Inc. ("Border States") brings this action to challenge the unlawful decision of Defendant United States Citizenship and Immigration Services ("USCIS") to deny an I-140 immigrant visa petition for an Analytics Developer position, a crucial role in Border States' expanding business operations.

2.     USCIS denied the petition for only one reason—its erroneous conclusion that the beneficiary, Mr. You Wang, did not have the requisite number of years of work experience for the position. USCIS's denial decision is obviously incorrect—the Analytics Developer position requires three years of work experience; Mr. Wang has more than *six years* of qualifying experience.

3.     To reach this unreasonable outcome, USCIS simply ignored all of Mr. Wang's work at Border States. USCIS offered no rationale for this decision to ignore the relevant evidence of his experience. This itself is an abuse of discretion. *See Ved v. United*

*States Citizenship and Immigration Services*, 2023 WL 2372360, at **7-8 (D. Alaksa Mar. 6, 2023) (holding that USCIS abused its discretion by denying an I-140 without sufficient support or explanation for disregarding foreign worker's past experience).

4.     Moreover, to reach its denial decision, USCIS ignored the Department of Labor's conclusion that Border States could require experience Mr. Wang gained at Border States to qualify for the position. The DOL's position is established under federal regulation at 20 C.F.R. § 656.17(i). In denying the petition, USCIS never even addressed the regulation.

5.     For these reasons, and others described below, USCIS's denial decision is contrary to law and an abuse of discretion. Border States therefore seeks an order vacating the denial and requiring USCIS to approve the I-140 or, in the alternative, remanding the denial decision to USCIS for further proceedings consistent with the agency's obligations under the law.

## JURISDICTION AND VENUE

6.     This case arises under the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.* and the Administrative Procedure Act (APA), 5 U.S.C. § 701 *et seq.* This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as a civil action arising under the laws of the United States, and 28 U.S.C. § 1361. This Court also has authority to grant declaratory relief under 28 U.S.C. §§ 2201-02, and injunctive relief under 5 U.S.C. § 702, and 28 U.S.C. § 1361. The United States has waived sovereign immunity under 5 U.S.C. § 702.

7.     Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1)(A) because this is a civil action in which the Defendants are an agency of the United States and a substantial part of the events or omissions giving rise to the claim occurred at USCIS's Nebraska Service Center.

## PARTIES

8.     Plaintiff Border States is a company headquartered in Fargo, North Dakota.

9.     Defendant U.S. Citizenship and Immigration Services ("USCIS") is a component of the U.S. Department of Homeland Security ("DHS"), 6 U.S.C. § 271, and an "agency" within the meaning of the APA, 5 U.S.C. § 551(1). USCIS is responsible for the adjudication of immigration benefits applications, including immigrant visa petitions. The USCIS Nebraska Service Center denied Border States' Immigrant Visa Petition to employ You Wang in the position of Analytics Developer. The Nebraska Service Center is a USCIS office that adjudicates petitions and applications for immigration benefits.

10.     Defendant Ur M. Jaddou is the Acting Director of USCIS. In this role, she oversees the adjudication of immigration benefits and establishes and implements governing policies. She has ultimate responsibility for the adjudication of Border State's I-140 petition and is sued in her official capacity.

## LEGAL FRAMEWORK

11.     Congress established two primary bases for immigration under the current system: promoting family unity and attracting workers with various skill sets to bolster the economy.

12.     The Immigration and Nationality Act ("INA") accordingly provides a process for noncitizens to obtain permanent employment in the United States in certain occupations.

13.     The employer first must submit a Form 9089 to apply for a labor certification from the United States Department of Labor ("DOL") confirming that there are not sufficient workers who are able, willing, qualified and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed. 8 U.S.C. § 1182(a)(5)(A)(i)(I)-(II).

14.     As part of its review, DOL looks at the actual minimal job requirements for the position, confirms there are not qualified U.S. workers available for the position, and also reviews the training and experience possessed by the foreign worker, the "beneficiary" of the petition.  20 C.F.R. § 656.17. Generally speaking, DOL evaluates conditions of the domestic labor market—i.e., whether there are able, willing, qualified, and available United States workers for the job offered to the alien and whether the alien's employment would have a negative effect on the wages and working conditions of similarly situated United States workers.

15.     Where a foreign worker is already employed with a petitioner company, regulations generally prohibit an employer from requiring domestic applicants to possess training and/or experience beyond what the foreign worker possessed at the time of hire. 20 C.F.R. § 656.17. There are two exceptions: (1) where the beneficiary gained the

experience in a position not substantially comparable to the position for which certification is sought; or (2) where the employer can demonstrate that it is no longer feasible to train an employee into the position.

16.    Thus, as part of the labor certification process, DOL considers the beneficiaries' experience before and after the time of hire, and considers whether the qualifications for a position create a barrier to United States worker applicants.

17.    DOL's Board of Labor Certification Appeals ("BALCA") has developed a body of opinions explaining circumstances where a petitioner may consider an employee's time working for the petitioner as necessary experience for a position. These opinions establish that a petitioner may require work experience the beneficiary did not have at the time of hire by demonstrating that it is not feasible to train an employee lacking this experience where the business environment required the position to change so that experience with the employer's business is required, where time pressures involved in the business made it not feasible for an employer to train an inexperienced employee, or where the beneficiary was the only person available to train a new employee so loss of the beneficiary left no one to train someone without experience. *See In Matter of Telapprise, LLC*, 2012-PER-03255 (Bd. Alien Lab. Cert. App. June 28, 2017) (concluding that employer established it was no longer feasible to train an employee based on employer letter describing how change in business justified change in position—from auditor to consultant—requiring at least two years of experience); *Matter of Kentrox, Inc*., 2012-PER-00038 (Bd. Alien Lab. Cert. App. May 22, 2014) (holding the employer could not train a U.S. worker because it would take two years to train someone to achieve the "alien's level of competency and specific product knowledge,"

and the employer's fast-paced release cycle did not "permit training or allow an experienced Software Engineer to attain the necessary specific product structure knowledge").

18.     Despite the existence of this authority, DOL frequently refused to certify labor certification applications where the beneficiary gained work experience with the employer. Confusion surrounding the DOL's position reached the point where, in 2022, DOL reportedly advised employers to seek reconsideration for denials based on the beneficiary's work experience with the employer. *See, e.g.,* Anderson, Stuart, *Labor Department Creates Permanent Immigration Crisis,* Forbes, available at https://www.forbes.com/sites/stuartanderson/2023/03/15/labor-department-creates-permanent-immigration-chaos/?sh=11ed40ea7d5f, (Mar. 15, 2023) (reporting on increase of DOL denials leading up to amended Form 9089).

19.     In 2023, DOL amended Form 9089 to more clearly request information as to how past experience with the employer, as well as experience in the position itself, could be used to qualify for the position. This approach is consistent with the regulations, which—as noted above—clearly permit an employer to consider work experience gained in the position based in certain circumstances.

20.     DOL approval is not the final step, however. Once the certification is obtained from DOL, the employer must submit the certification along with an I–140 visa petition to the USCIS on behalf of the "beneficiary" to the petition. 8 C.F.R. § 204.5(l )(1); see 8 U.S.C. § 1153(b)(3)(C).

21.     USCIS's analysis is related, but focused on whether the beneficiary is qualified for the position. So where DOL determines whether the experience requirements

are appropriate—i.e., whether the level of experience deters domestic workers—USCIS should look to whether the beneficiary meets those qualifications. 8 C.F.R. § 204.5(l)(3)(ii) (explaining the employer must submit documentation to show that the non-citizen worker meets any educational, training and experience, or other requirements identified by the labor certification).

22.    In making its determination, USCIS must consider information submitted by the petitioner demonstrating how the beneficiary's work experience meets the requirements of the position. Unlike the DOL, USCIS should not review whether the job requirements are the actual minimum needed by the employer or, stated differently, whether the employer is using requirements that create a barrier for domestic workers.

23.    As recent cases demonstrate, USCIS has unreasonably denied petitions on the erroneous basis that past work experience with the employer cannot qualify a foreign worker for a position with that employer. *See Ved v. United States Citizenship and Immigration Services*, 2023 WL 2372360, at **7-8 (D. Alaksa Mar. 6, 2023) (holding that USCIS abused its discretion by denying I-140 on the basis that foreign worker's past experience with the employer could not qualify employee for position). In *Ved,* USCIS seized on ambiguities in the Form 9089—ambiguities DOL has since revised—to categorically refuse to consider a beneficiary's work experience with the employer. This position was not only inconsistent with USICS's role, but it also ignores the work experience that, at least arguably, is most relevant to the position.

24.    If USCIS had the legal authority to categorically refuse to consider certain types of work experience, USCIS still is required to explain the basis for that decision

and—because it is inconsistent with the DOL—to explain why it is reaching a different result under the regulations applicable to DOL's findings.  As courts in this district have explained, USCIS is responsible for articulating "a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Scripps Coll. v. Jaddou*, No. 4:23CV3075, 2023 WL 8601208, at *6 (D. Neb. Dec. 12, 2023) (internal quotations and citations omitted)

25.    Here, as described below, USCIS abused its discretion by failing to offer any explanation for the denial decision. USCIS simply chose to ignore Mr. Wang's work experience at Border States—including more than three years in the position itself—despite the detailed explanations and volume of evidence presented with the petition and in response to a Request for Evidence.

## FACTUAL ALLEGATIONS

### A. Background on Border States Industries

26.    Border States was founded in 1952 as a wholesale electrical distributor. It provides products, material management solutions, and delivery and logistics expertise to tens of thousands of customers across diverse industries, including electrical construction, utility, renewable energy, datacomm, and education. Headquartered in Fargo, North Dakota, Border States employs approximately 3,125 employees throughout its branch network in 29 states. Border States has delivered innovative products and supply chain solutions for over 70 years, and that work increasingly involves assisting customers seeking to streamline their supply chains, reduce expenses, increase efficiency, and deliver measurable bottom-line results.

27.     Because of its expansive footprint and business emphasis on supply chain efficiency, Border States' Data and Analytics Team is critical to its business operations.

28.     This has been particularly true in recent years, as Border States has rapidly expanded its business. Indeed, during the last eight years Border States has experienced tremendous revenue growth, increasing sales revenue from approximately $1.5 billion in 2016 to approximately $3.6 billion in 2023.

29.     Border States now has a strategic plan to triple or even quadruple revenue from current levels to as much as $12 billion by 2030. To succeed in this growth strategy, Border States' strategic plan requires tools and analysis provided by Border States' Data and Analytics team. More specifically, Border States' strategic plan is titled the "Connect 25" plan and reflects a business strategy that incorporates new technological developments and resources to identify market trends, vendor data, and client-data analysis.

**B. You Wang's employment with Border States since 2016**

30.     Mr. Wang began work at Border States more than seven years ago—in November 2016. From November 2016 to April 2019, Mr. Wang worked as a Sales Operations Data & Segment Analyst. This was an entry-level position with job duties focused on sales data analysis and reporting. This position was part of the Sales Enablement Operations team, and Mr. Wang spent 75% of his time working on ad hoc or one-time data extraction and transformation projects to respond to questions from area sales leaders provided to him through his supervisor.

31.     In April 2019, Mr. Wang began work in a new position as Analytics Developer. This position is in a different department at Border States—the Data and

Analytics team—which focuses on larger scale data analytics projects encompassing various departments such as finance, pricing, and operations. The Analytics Developer position is important to that team's success—it creates a suite of data warehouses, visualization dashboards, and reporting architectures. The job duties are not substantially comparable to Mr. Wang's prior role on the Sales Enablement Operations team—as an Analytics Developer, Mr. Wang's work designing data visualization tools and dashboards comprises 40% of the job duties for the position while 60% of the job duties entail modeling, coding, and statistical analysis of big data.

32.   During the nearly five years he has worked in this position, Border States' business has changed. As noted, Border States has experienced significant revenue growth and expects larger revenue growth in the future based on its "Connect 25" strategy. Because of the change in Border States' business strategy, Mr. Wang's Analytics Developer position is now more focused on providing advanced analytics across the company. As a data scientist, Mr. Wang focuses on providing advanced analytics, machine learning, and predictive modeling.

33.   Based on the restructuring and focus of his position, Mr. Wang is now the *only* Analytics Developer at the company. If he were no longer working at Border States, the company would have no one to perform his job functions and—because of the experience he has gained—it would not be possible to train an employee to take on those functions.

### C. The Department of Labor Certified the Analytics Developer Position

34.     Seeking to hire a foreign worker for the Analytics Developer position, Border States submitted a Form 9089 Application for Permanent Labor Certification to the United States Department of Labor requesting certification for the position.   Border States completed and submitted the older version of the Form 9089, which—as noted above—changed in the middle of 2023 to better reflect the beneficiary's work experience for the employer.

35.     Border States indicated that the position required 36 months of experience as an Analytics Developer or in a position that had similar job duties and experience.

36.     Border States also explained how it had conducted detailed recruitment of US workers for the position, including by posting advertisements online, through the state workforce agency, and in the *Fargo Forum* newspaper. Border States did not receive any qualified applicants for the position.

37.     On March 23, 2023, the Secretary of Labor certified the Form 9089, thus certifying that there are insufficient workers who are able, willing, qualified, and available at the time of application for a visa and admission to the United States, and that the employment of beneficiaries will not adversely affect the wages and working conditions of workers in the United States similarly employed.

38.     DOL did not raise any concern relating to the type of experience required for the Analytics Developer position. In other words, DOL did not object to requiring work experience in the position itself.

**D. Border States Submits an I-140 and USCIS Issues a Request for Evidence**

39.     On September 20, 2023, Border States submitted an I-140 to the Department of Homeland Security. Border States provided USCIS with the approved labor certification, as well as significant evidence demonstrating Mr. Wang's qualifications for the Analytics Developer position.

40.     Specifically, Border States provided employer letters showing that Mr. Wang had **42.5 months** of qualifying experience at the University of Cincinnati, Berkely Net Underwriters, Blue Cross Blue Shield of North Dakota, and Border States Electric. This was far more than the 36 months of experience required.

41.     Border States also explained that Mr. Wang had **38 months of _additional_ experience** in the Analytics Developer position itself. Mr. Wang's experience as Analytics Developer between April 2019 and June 2022 qualified him for that very same Analytics Developer position at Border States.

42.     On September 27, 2023, less than one week after receiving the I-140, USCIS issued a Request for Evidence that ignored the evidence submitted by Border States and did not even acknowledge Mr. Wang's qualifying experience or changes to Border States' business.

43.     The RFE first erred by misstating Mr. Wang's qualifying experience. The RFE claimed incorrectly that the only evidence submitted by Border States to demonstrate Mr. Wang's experience was (a) "an experience letter from Blue Cross Blue Shield of North Dakota" and (b) "an experience letter from Berkely Net Underwriters LLC." The RFE did

12

not acknowledge, much less actually consider, Mr. Wang's qualifying experience at the University of Cincinnati or at Border States.

44.     The RFE also failed to even address how Mr. Wang's 38 months of experience in the Analytics Developer position itself qualified him for the position, a key point emphasized by Border States' petition. USCIS simply ignored Border States' explanation that significant changes to its business over several years meant that Mr. Wang's qualifying experience as an Analytics Developer counted toward the requirements for the position.

45.     USCIS never even acknowledged the evidence and explanation on the question of whether it was feasible for Border States to train a worker for the position in light of the significant changes to its business. As a result of its failure to even consider Border States' explanation of this issue, USCIS also failed to address DOL's decision to certify the labor certificate based, in part, on this evidence and explanation.

**E.  Border States' Response to the RFE**

46.     On December 20, 2023, Border States provided a timely and thorough response to USCIS' Requests for Evidence. Border States provided new employer letters from Mr. Wang's supervisor at the University of Cincinnati, a letter from Shari Else, his supervisor in this previous position at Border States, and a letter from Andrew Block, his current supervisor, explaining how Border States' business had changed between 2019 and 2022.

47.     Border States also submitted a chart explaining how Mr. Wang possessed 42.5 months of qualifying reporting and analytics experience in April 2019—not including his experience in the position itself from April 2019 to June 2022:

| Employer Name | Position | 42.5 Months of Qualifying Experience |
|---|---|---|
| University of Cincinnati | Graduate Teaching Assistant (part-time) | 5 months (full-time equiv.) |
| Berkley Net Underwriters | Data Analyst | 6 months |
| Border States Industries | Sales Operations Data & Segment Analyst | 26.5 months |
| Blue Cross Blue Shield | Healthcare Intelligence Analyst | 5 months |

48.     Border States' response to the RFE also explained that Mr. Wang's job duties as Sales Operations Data & Segment Analyst were not substantially comparable to the job duties of the Analytics Developer position because they did not perform the same job duties more than 50% of the time.  Specifically, Border States included the following evidence describing how the positions were different:

- Border States submitted a letter from Mr. Wang's previous supervisor, Shari Else, explaining that the Sales Operations Data & Segment Analyst was an entry-level position within the SEO department, with job duties focused exclusively on sales data analysis and reporting.

- Ms. Else's letter explained further that Mr. Wang spent 75% of his time in the Sales Operations Data & Segment Analyst working on ad hoc or one-time data extraction and transformation projects to respond to questions from area sales leaders provided to him through his supervisor (including me).

- Border States also submitted a letter from Andrew Block, the supervisor for the Analytics Developer position, explaining that the duties performed in the Analytics Developer role, unlike the duties for

14

the Sales Operations role, focus on larger scale data analytics projects encompassing various departments such as finance, pricing, and operations.

- The Analytics Developer position creates a suite of data warehouses, visualization dashboards, and reporting architectures. Design of data visualization tools and dashboards comprises 40% of the job duties for the position while 60% of the job duties entail modeling, coding, and statistical analysis of big data.

- Border States further submitted information regarding the pay scales for each position, demonstrating that the Sales Operations Data & Segment Analyst and Analytics Developer roles have different levels of pay relative to their job duties.

- Border States also submitted contemporaneous organizational charts show that the two positions are located in different departments and at different operational levels within the company.

49.     This evidence all demonstrated that Mr. Wang's work as a Sales Operations Data & Segment Analyst did not include performing the same job duties as his Analytics Developer position more than 50% of the time and, therefore, was not substantially comparable to the Analytics Developer. Mr. Wang's experience as a Sales Operations Data & Segment Analyst counts as qualifying experience under 20 C.F.R. § 656.17(i).

**F.  USCIS Denies the I-140 Petition Based on its Refusal to Consider Mr. Wang's work experience at Border States.**

50.     On December 29, 2023, less than one week after receiving Border States' detailed response, USCIS issued a denial letter. USCIS's denial letter is conclusory, and does not engage on any of the explanation or evidence submitted by Border States.  For example, USCIS's denial flatly refuses to consider any of Mr. Wang's experience at Border States as qualifying experience, but it does not acknowledge—let alone address—the detailed explanations and evidence showing that Mr. Wang's experience as a Sales

Operations Data & Segment Analyst was not substantially comparable and therefore counted as qualifying experience for the Analytics Developer position.

51.    USCIS's inquiry should have been whether Mr. Wang had the necessary 36 months of experience as of June 17, 2022, which was his priority date, which Mr. Wang indisputably had based on his work at Border States. As in *Ved*, USCIS simply refused to consider Mr. Wang's experience with the employer without explanation. *See Ved*, 2023 WL 2372360, at *7 (D. Alaska Mar. 6, 2023). Therefore, USCIS's denial decision was unreasonable.

52.    Separately, USCIS's denial decision was an abuse of discretion because it ignored Border States' response to the RFE demonstrating that it is no longer feasible to train a worker to qualify for the Analytics Developer position. This evidence supported a finding that Mr. Wang gained the requisite level of experience *in the position itself*, as an Analytics Developer. *See* 20 C.F.R. § 656.17(i).

53.    That evidence included:

- Organizational charts demonstrating that, with internal restructuring of its departments, Mr. Wang now is the **only** Analytics Developer at Border States. Border States also included evidence showing that, at the time Mr. Wang started in the position, Border States had multiple employees in the same role. But, since then, Border States restructured its operations due to changes in the industry and its larger corporate strategy. Thus, if Mr. Wang were not employed by Border States, there would be no one to train a new employee as an Analytics Developer.

- Documentation and letters from Mr. Wang's past and present supervisors describing the significant industry changes influencing the nature of Border States' business and related changes to the Analytics Developer position. This documentation included a detailed description of Border States' "Connect 25" corporate

strategy, which requires the Analytics Developer position to use more-sophisticated tools and statistical analysis to analyze vendor relationships, provide insights into internal pricing/profit margins, and create "dashboards" that incorporate critical business information. To meet these expectations, the Analytics Developer position must handle a larger volume of data and cover a larger geographic scope.

- Documentation showing that Border States' revenue has more than doubled since 2019, and Border States plans to go from $3.6 billion in revenue in 2023 to $12 billion in 2030. To sustain this rate of revenue growth, Border States needs to rapidly implement a new Sales Force CRM system in collaboration with Border States' Sales Enablement and Operations team and a Vendor Scorecard dashboard in collaboration with Border States' vendor management team. It would be impossible for Border States to train an employee within the timeline required for implementation of these projects.

54.    USCIS's refusal to even consider this evidence, it ignored both the pertinent regulation, 20 C.F.R. § 656.17(i), but also the policy goals underlying the regulation itself. The Analytics Developer position is critical to the changing nature of the company and its plans for revenue growth. The evidence showed that, as part of its Connect 25 strategy, Border States needs to increase revenue very quickly—within the next year or two—and so it is not feasible to train someone with the level of technological sophistication and ability to work with multiple departments within Border States.

55.    As a result of USCIS's denial decision, Border States has no one to fill the Analytics Developer position after September 2024 when Mr. Wang's current H-1B expires. As a result, USCIS has left Border States in a position where it will be severely limited in its ability to achieve its corporate goals. USCIS put Border States in this position

without even acknowledging—much less analyzing—the significant evidence presented by Border States or the relevant regulations.

## EXHAUSTION

56.     USCIS's denials of Border States' immigrant visa petition constitutes a final agency action under the APA, 5 U.S.C. § 701, *et seq.* Neither the INA nor DHS regulations at 8 C.F.R. § 103.3(a), require an administrative appeal of the denial. Accordingly, Border States has no administrative remedies that it is required to exhaust.

57.     Under 5 U.S.C. §§ 702 and 704, Border States has suffered a "legal wrong" and has been "adversely affected or aggrieved" by agency action for which there is no adequate remedy at law.

## CAUSES OF ACTION
### COUNT I
### Administrative Procedure Act Violation (5 U.S.C. § 706)

58.     Border States incorporates the allegations of the preceding paragraphs as if fully set forth herein.

59.     Border States is entitled to review by this Court pursuant to 5 U.S.C. §§ 701-706.

60.     A reviewing court shall "hold unlawful and set aside agency action . . . found to be – arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

61.     Defendants' denial of Border States' Form I-140 Visa Petition on behalf of You Wang, seeking an employment-based immigrant visa, constitutes a final agency action that is arbitrary and capricious, an abuse of discretion, and not in accordance with the law.

62.    Border States included significant evidence demonstrating that Mr. Wang had more than the necessary years of experience for the Analytics Developer position, including employer letters, pay records, and organizational charts.

63.    Organizational charts, corporate records reflecting business strategy and revenue growth, employer letters, pay records, and contemporaneous supporting documentation are all primary and credible evidence.

64.    It was an abuse of discretion and not in accordance with the law for USCIS to fail to consider this evidence.

65.    It was an abuse of discretion and not in accordance with the law for USCIS to ignore 20 C.F.R. § 656.17 or consider how the evidence submitted by Border States met the requirements of the regulations.

66.    It was an abuse of discretion for USCIS to reach a decision that is directly at odds with DOL's determination in certifying the labor certificate that Border States could reasonably consider Mr. Wang's experience at Border States as relevant, qualifying work experience for Border State' Analytics Developer position. Although USCIS is not bound by DOL's decision, it was an abuse of discretion for USCIS not to explain why it was reaching a different result.

67.    As a result of USCIS's unlawful decisions, Border States has suffered, and will continue to suffer, injury from the denial of an immigrant visa petition for Mr. Wang. As described above, Border States faces a serious risk that it will not be able to meet critical business strategy goals in the short term because of USCIS's arbitrary denial decision.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests this Court grant the following relief:

1.      Declare that Defendants abused their discretion and erred by denying Border State's I-140 petition to employ Mr. You Wang as an Analytics Developer;

2.      Vacate Defendants' denial of the Form I-140 immigrant visa petition Border States filed on behalf of Mr. Wang;

3.      Order Defendants to promptly approve the Form I-140 Form I-140 immigrant visa petition Border States filed on behalf of Mr. Wang;

4.      Award Border States its costs in this action; and

5.      Grant any other relief that this Court may deem just and proper.


Dated:  January 31, 2024                    **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

                                            *s/David W. Asp*
                                            David W. Asp (MN 344850)
                                            (*pro hac vice* pending)
                                            100 Washington Avenue South, Suite 2200
                                            Minneapolis, MN 55401
                                            (612) 339-6900
                                            dwasp@locklaw.com


                                            **ATTORNEYS FOR PLAINTIFF**