IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BORDER STATES INDUSTRIES, INC., and YOU WANG,<br><br>      Plaintiffs,<br><br>  vs.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, and UR M. JADDOU, Director, United States Citizenship and Immigration Services;<br><br>      Defendants. | 4:24CV3022<br><br>MEMORANDUM AND ORDER |

  This matter is before the Court on cross-motions for summary judgment. (Filing No. 26; Filing No. 30.) At issue is whether the United States Citizenship and Immigration Services properly denied Border States Industries, Inc.'s I-140 Immigration Visa Petition to employ You Wang in the position of Analytics Developer. Border States and Wang (collectively, Plaintiffs) bring this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq.*, and the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*

  Having considered the administrative record, the cross motions for summary judgment, and the parties' briefing, the court will deny Plaintiffs' Motion for Summary Judgment (Filing No. 26) and will grant Defendants' Motion for Summary Judgment (Filing No. 30), for the reasons that follow.

BACKGROUND

  Border States Industries, Inc. ("Border States") is a company headquartered in Fargo, North Dakota, that petitioned the United States Citizenship and Immigration Service ("USCIS") for permission to permanently employ You Wang, ("Wang", or "the beneficiary"), as an Analytics Developer. USCIS denied the application.

I.    Statutory and Regulatory Background

The Immigration and Nationality Act ("INA") allocates a certain number of employment-based visas each year to members of specified preference categories. The category at issue in this case is for "Skilled workers, professionals, and other workers," a classification for "Qualified immigrants who hold baccalaureate degrees and who are members of the professions." 8 U.S.C. § 1153(b)(3)(A)(ii).

There is a three-step process for noncitizens to obtain permanent employment in the United States under the INA. First, the employer applies for a labor certification from the U.S. Department of Labor confirming that "there are not sufficient workers who are able, willing, qualified . . . and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed." 8 U.S.C. § 1182(a)(5)(A)(i)(I)-(II). The employer uses ETA Form 9089.

Second, once the Department of Labor grants certification, the employer submits the certification with an Immigrant Petition for Alien Worker (Form I-140) to USCIS on behalf of the noncitizen worker, known as the "beneficiary" to the petition. 8 C.F.R. § 204.5(l)(1); see also 8 U.S.C. § 1153(b)(3)(C). Third, upon USCIS's approval of the I-140 petition, the beneficiary may apply for lawful permanent resident status by submitting an Application to Register Permanent Residence or Adjust Status (Form I-485). See 8 U.S.C. § 1255(a).

II.   Factual and Procedural Background

The following facts are undisputed for the purposes of the cross-motions for summary judgment. Wang is a citizen of China who is lawfully residing in the United States under H-1B status. Wang has worked for Border States for more than seven and a half years. His H-1B status expires on September 30, 2024.

Wang has a Bachelor's Degree in Economics from Minnesota State University – Moorhead, and a Master's Degree in Applied Economics from the University of Cincinnati. He

2

has work experience in the Statistician occupation as defined by the United States Department of Labor's Occupational Information Network.

From August 2014 through June 2015 (the equivalent of 5 months of full-time work), Wang worked part-time as a Graduate Teaching Assistant with the University of Cincinnati Department of Economics. From March 14, 2016 to September 15, 2016, Wang worked as a Data Analyst with Berkley Net Underwriters LLC. From November 5, 2018 to April 5, 2019, Wang worked as a Healthcare Intelligence Analyst for Blue Cross Blue Shield of North Dakota. Wang worked as a Sales Operations Data and Segment Analyst ("Segment Analyst") at Border States, and a portion of his time in that position overlapped with his employment with Blue Cross Blue Shield.[1] This position was part of the Sales Enablement and Operations ("SEO") department. Each of these positions is within the category of "Statisticians" as described on the O*Net OnLine database maintained by the U.S. Department of Labor.

Since April 6, 2019, Wang has worked for Border States as an Analytics Developer. Although the Sales Operations Data and Segment Analyst position and the Analytics Developer position are both within the "Statistician" category, the positions did not require Wang to perform the same job duties more than 50 percent of the time. The Sales Operations Data and Segment Analyst position was an entry-level job in the SEO department, with job duties focused exclusively on sales data analysis and reporting. Wang spent 75% of his time in that job working on ad hoc or one-time data extraction and transformation projects.

The duties of the Analytics Developer position focus on larger scale data analytics projects encompassing various departments such as finance, pricing, and operations. The position creates a suite of data warehouses, visualization dashboards, and reporting architectures. Design of data visualization tools and dashboards comprises 40% of the job duties for the position while 60% of

---

[1] The Plaintiffs' Statement of Undisputed Facts says "From November 2016 to April 2019, Mr. Wang worked as a Sales Operations Data and Segment Analyst at Border States." (Filing No. 27 at p.4.) The Form 9089 says that he began work at Border States in 2017. Border States later clarified that Wang was initially hired in 2016 as a market intelligence intern. He was promoted to Sales Operations Analyst in May 2017, and the title was later changed to Sales Operations Data and Segment Analyst with no material change in his job duties. (Filing No. 24-3 at p. 90.) In Form 9089 Section K, Border States indicated that Wang worked 20 hours per week in this position from November 2018 through April 2019. Thus, Border States calculated that Wang's 26.5 months in this position includes 24 months of full-time work and 2.5 months of part-time work. (Filing No. 24-3 at p. 49.)

the job duties entail modeling, coding, and statistical analysis of big data. Unlike the Sales Operations Data and Segment Analyst position, ad hoc data extraction and transformation projects are not part of the Analytics Developer job duties.

The two positions are in different departments within Border States and have significantly different pay scales. Due to internal restructuring within Border States, Wang is now the only Analytics Developer for the whole company. Border States requires the Analytics Developer position to use sophisticated tools and statistical analysis to analyze vendor relationships, provide insights into internal pricing/profit margins, and create "dashboards" that incorporate critical business information. The Analytics Developer position must handle a larger volume of data and cover a larger geographic scope.

On June 17, 2022, Border States submitted a Form 9089 Application for Permanent Labor Certification to the United States Department of Labor ("DOL") requesting certification for the Analytics Developer position. (Filing No. 24-4 at p. 48-62). In Part H.6 of the labor certification, Border States indicated that the Analytics Developer position required 36 months of "experience in the job offered." (Filing No. 24-4 at p. 50.) In Part H8 of the labor certification, Border States said there was no alternate combination of experience and education that would be acceptable. Id. In Part H.10 of the labor certification, Border States indicated that "experience in an alternate occupation" would not be acceptable for the Analytics Developer position. Id.

> **OMB Approval:** 1205-0451  
> **Expiration Date:** 04/30/2023  
> **Application for Permanent Employment Certification**  
> **ETA Form 9089**  
> **U.S. Department of Labor**
>
> **H. Job Opportunity Information Continued**
>
> **5-B.** Indicate the field of training:
>
> **6.** Is experience in the job offered required for the job? ✔ Yes ☐ No  
> **6-A.** If Yes, number of months experience required: 36
>
> **7.** Is there an alternate field of study that is acceptable? ☐ Yes ✔ No
>
> **7-A.** If Yes, specify the major field of study:
>
> **8.** Is there an alternate combination of education and experience that is acceptable? ☐ Yes ✔ No
>
> **8-A.** If Yes, specify the alternate level of education required:  
> ☐ None  ☐ High School  ☐ Associate's  ☐ Bachelor's  ☐ Master's  ☐ Doctorate  ☐ Other
>
> **8-B.** If Other is indicated in question 8-A, indicate the alternate level of education required:
>
> **8-C.** If applicable, indicate the number of years experience acceptable in question 8:
>
> **9.** Is a foreign educational equivalent acceptable? ☐ Yes ✔ No
>
> **10.** Is experience in an alternate occupation acceptable? ☐ Yes ✔ No  
> **10-A.** If Yes, number of months experience in alternate occupation required:
>
> **10-B.** Identify the job title of the acceptable alternate occupation:
>
> **11.** Job duties – If submitting by mail, add attachment if necessary. Job duties description must begin in this space.  
> See Attachment

In Part H.14 Border States listed additional skills required for the job opportunity.

> **14.** Specific skills or other requirements – If submitting by mail, add attachment if necessary. Skills description must begin in this space.  
> Fluency in common statistical analysis methods; Prior experience working with a sales force; Experience delivering predictive and prescriptive analysis; Experience writing R for data analytics; Experience with and working knowledge of multiple reporting suites, such as Microsoft Power BI, SAP BusinessObject, or Tableau; Understanding of data visualization techniques and best practices.

In Part J.18 of the labor certification, Border States indicated that Wang has the experience required for the Analytics Developer Position. (Filing No. 24-4 at p. 53.) In Part J.21 of the labor certification, Border States indicated that Wang did not "gain any of the qualifying experience with the employer in a position substantially comparable to the job opportunity requested." Id. The form indicates that experience in an alternate occupation is "not applicable."

5

| | | | | |
|---|---|---|---|---|
| 17. Did the alien complete the training required for the requested job opportunity, as indicated in question H.5? | ☐ Yes | ☐ No | ✔ NA |
| 18. Does the alien have the experience as required for the requested job opportunity indicated in question H.6? | ✔ Yes | ☐ No | ☐ NA |
| 19. Does the alien possess the alternate combination of education and experience as indicated in question H.8? | ☐ Yes | ☐ No | ✔ NA |
| 20. Does the alien have the experience in an alternate occupation specified in question H.10? | ☐ Yes | ☐ No | ✔ NA |
| 21. Did the alien gain any of the qualifying experience with the employer in a position substantially comparable to the job opportunity requested? | ☐ Yes | ✔ No | ☐ NA |
| 22. Did the employer pay for any of the alien's education or training necessary to satisfy any of the employer's job requirements for this position? | ☐ Yes | ✔ No | |
| 23. Is the alien currently employed by the petitioning employer? | ✔ Yes | ☐ No | |

In Part K of the labor certification, Border States listed Wang's work history, including his time at Border States (both as a Sales Operations Data and Segment Analyst and Analytics Developer), as well as his employment with Blue Cross Blue Shield, and at Berkley Net Underwriters. (Filing No. 24-4 at p. 53-55, 59-62.)

DOL approved the labor certification on March 29, 2023 without selecting the application for audit or requesting any additional documentation. (Filing No. 24-4 at 47.) On September 20, 2023, Border States submitted a Form I-140 Petition for an immigrant visa petition on Wang's behalf, premised on the granted labor certification. (Filing No. 24-4 at p. 29-45; 47.) The petition was accompanied by supporting documents demonstrating DOL's approval of the labor certification; Wang's educational history and work experience; Wang's qualifications for the Analytics Developer position; and Border States' ability to pay the offered wage for the Analytics Developer position. See generally CAR 0136-0744.

Border States calculates that Wang has 42.5 months of qualifying reporting and analytics experience prior to his hire as Analytics Developer in April 2019, and 38 months of experience in the Analytics Developer position. On September 27, 2023, USCIS issued a Request for Evidence. USCIS claimed that Border States had only submitted two pieces of evidence showing that Wang met Border States' requirement for 36 months of "experience in the job offered": (1) an experience letter demonstrating his experience at Blue Cross Blue Shield of North Dakota; and (2) an

6

experience letter demonstrating his experience at Berkley Net Underwriters LLC. The Request for Evidence did not acknowledge Wang's experience at the University of Cincinnati or in either of his positions at Border States. (Filing No. 24-4 at p. 8-10.)

On December 20, 2023, Border States submitted a response to USCIS's Request for Evidence. Border States provided new employer letters from Wang's supervisor at the University of Cincinnati, a letter from his supervisor in this previous position at Border States, and a letter from his current supervisor, explaining how Border States' business had changed between 2019 and 2022. (Filing No. 24-3 at p. 78-118, Filing No. 24-4 at p. 1-7.)

Border States submitted a chart purportedly explaining Wang's months of qualifying reporting and analytics experience until he started as an Analytics Developer in 2019. Border States' response to the RFE also explained that Wang's job duties as Sales Operations Data and Segment Analyst were not substantially comparable to the job duties of the Analytics Developer position because, for the reasons described above, the positions did not require performance of the same job duties more than 50% of the time. (Filing No. 24-3 at 85-86, 91-92.)

On December 29, 2023, USCIS issued a letter denying Border States' I-140 Petition. On January 31, 2024, Border States filed the initial Complaint in this matter, alleging that USCIS's denial of its I-140 Petition on behalf of Wang was arbitrary and capricious, an abuse of discretion, and not in accordance with the law. (Filing No. 1.)

On March 7, 2024, USCIS reopened consideration of the I-140 visa petition on its own motion and issued a second request for evidence on March 2024. (Filing No. 24-3 at p. 1.) USCIS wrote that because the labor certification required experience in "the job offered" and stated that experience in an "alternate occupation" was not acceptable, Border States could not rely on Wang's experience at the University of Cincinnati Department of Economics, Berkley Net Underwriters LLC, Blue Cross Blue Shield of North Dakota, or as a Sales Operations Data and Segment Analyst at Border States. USCIS wrote that none of this experience was "experience in the job offered" because Wang was not "employed as an Analytics Developer at these companies." (Filing No. 24-3 at p 66-70.)

USCIS also asserted that because the labor certification indicated that Wang did not gain any of his qualifying experience with Border States "in a position substantially comparable to the job opportunity requested," it would not consider his 38 months in the Analytics Developer role. Id. USCIS did not consider evidence that Wang qualified based on his experience in the Analytics Developer position on the ground that it was "no longer feasible to train a worker" for the position. Id. USCIS noted in the request for evidence that the issue of whether it is feasible to train another worker is "not under the purview of USCIS and must be addressed by the Department of Labor." (Filing No. 24-3 at p. 20.) On May 16, 2024, Border States submitted a detailed response to USCIS's second Request for Evidence. On June 11, 2024, USCIS denied Border States' I-140 Petition a second time. (Filing No. 24-3 at p. 1-7.) Plaintiffs filed an Amended Complaint challenging USCIS's denial on July 1, 2024. (Filing No. 20.) The parties stipulated to a briefing schedule on the pending cross-motions for summary judgment.

STANDARD OF REVIEW

In a case under the APA, "summary judgment 'serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review.' " *Friends of Animals v. Ross*, 396 F. Supp. 3d 1 (D.D.C. 2019) (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)). When conducting a review of agency action under the APA, the district court "sits as an appellate tribunal" and the entire case on review is a question of law. *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

"It is well-established that judicial review under the APA is limited to the administrative record that was before the agency when it made its decision." *Voyageurs Nat. Park Ass'n v. Norton*, 381 F.3d 759, 766 (8th Cir. 2004). "By confining judicial review to the administrative record, the APA precludes the reviewing court from conducting a de novo trial and substituting its opinion for that of the Agency." Id. (citing *United States v. Morgan*, 313 U.S. 409, 422 (1941)).

The agency action may be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Arbitrary and capricious is a highly deferential standard of review. *Adventist Health Sys./Sunbelt, Inc. v. United States Dep't of*

*Health & Hum. Servs.,* 17 F.4th 793, 803 (8th Cir. 2021). The court must defer to agency action so long as "an agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action. *Id.* An agency decision is arbitrary and capricious if "the agency acted outside 'the bounds of reasoned decision making,' " *Russellville Legends LLC v. United States Army Corps of Engineers,* 24 F.4th 1192, 1196 (8th Cir. 2022) .

> It is not enough that the court would have come to a different conclusion than the agency. *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 841 (9th Cir. 2003). Instead, the court reviews the agency's decision to determine if it 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.' Id.

*Alban v. U.S. Dep't of Homeland Sec.,* No. 4:23CV3125, 2024 WL 3581913, at *4 (D. Neb. June 6, 2024), citing *Rijal v. U.S. Citizenship & Immigr. Servs.*, 772 F. Supp. 2d 1339, 1344 (W.D. Wash. 2011), aff'd, 683 F.3d 1030 (9th Cir. 2012).

## ANALYSIS

Plaintiffs assert Wang has the experience to qualify for the Analytics Developer position based on: his experience as an Analytics Developer at Border States; his experience as a Sales Operations Data and Segment Analyst at Border States; and, his experience in other jobs within the "statistician" category prior to his employment with Border States. Plaintiffs also assert that USCIS's decision creates an unnecessary conflict with DOL's approval of the labor certification. Thus, Plaintiffs contend USCIS's denial of the I-140 immigrant visa petition is arbitrary and capricious, an abuse of discretion, and not in accordance with the law. Plaintiffs request that the Court either grant Plaintiffs' motion for summary judgment and enter an order requiring USCIS to approve the I-140 Petition, or remand this matter to USCIS for further proceedings consistent with the agency's obligations under the law. (Filing No. 28 at p. 2.)

Defendants argue that USCIS is bound by the contours of the labor certification, and that based on the plain terms of that certification, Wang does not qualify. Defendants' cross-motion for summary judgment requests denial of Plaintiffs' motion, and that summary judgment be granted in Defendants' favor. (Filing No. 30 at p. 27.)

      I.      Wang's Experience as Analytics Developer for Border States

Wang was employed by Border States at the time the labor certification was submitted. For purposes of the approval of the labor certification Border States relied upon the exceptions provided in 20 C.F.R. § 656.17(i)(3)(i) and (ii). Plaintiffs argue that DOL's labor certification regulation is clear that experience beyond that the beneficiary possessed "at the time of hire" may be considered if either of the two exceptions listed in 20 C.F.R. § 656.17(i)(3) apply. Plaintiffs assert at least one, if not both of the conditions in subsections (i) and (ii), apply. The regulation states:

> (3) If the alien beneficiary already is employed by the employer, in considering whether the job requirements represent the employer's actual minimums, DOL will review the training and experience possessed by the alien beneficiary at the time of hiring by the employer, including as a contract employee. The employer can not require domestic worker applicants to possess training and/or experience beyond what the alien possessed at the time of hire unless:
>     (i) The alien gained the experience while working for the employer, including as a contract employee, in a position not substantially comparable to the position for which certification is being sought, or
>     (ii) The employer can demonstrate that it is no longer feasible to train a worker to qualify for the position.

      a.      Experience in a Position Not Substantially Comparable

Plaintiffs argue that Wang qualified for the position because, as of the priority date, Wang had 38 months of experience in the Analytics Developer position, working for Border States. He was employed in this position for Border States from April 6, 2019 up until and through the priority date of June 17, 2022. In Part J.21 of the labor certification, Border States marked "no" when asked whether Wang gained "any of the qualifying experience with the employer in a position substantially comparable to the job opportunity requested." Based on this response, USCIS found that Wang's experience as an Analytics Developer for Border States "cannot be utilized to meet the 36 month experience requirement." (Filing No. 24-3 at p. 6.)

Plaintiffs argue that the failure to consider Wang's experience in the Analytics Developer role was arbitrary capricious and contrary to law. (Filing No. 28 at 11). Plaintiffs' arguments rest

on the interpretation of the phrase "substantially comparable." Plaintiffs argue the USCIS relies on an unreasonable interpretation of the term "substantially comparable" in 20 C.F.R. § 656.17. 20 C.F.R. § 656.17(i)(5)(ii) defines a "substantially comparable" job or position to mean a job or position requiring performance of the same job duties more than 50 percent of the time. Plaintiffs argue that a "more natural reading" requires a comparison between two positions: "the 'job opportunity requested' and a different position that must be compared to that job opportunity." (Filing No. 28 at 12.) Plaintiffs assert positions are not "substantially comparable" when they are the same, because comparison necessarily requires two items being compared. In short, it argues that "Because Analytics Developer is *the* job opportunity, and not a position substantially comparable to the job opportunity," it marked "no" on Part J.21 of the labor certification.

If a "substantially comparable" job or position means one requiring performance of the same duties "more than 50 percent of the time" then plainly a job or position that is *not* substantially comparable must include ones that require performance of the same duties 50 percent of the time or less. However, Plaintiffs' reading of the regulation would mean that for a job to be "not substantially comparable" the job would require the performance of the same job duties 0-50 percent of the time (because it is substantial comparable when the duties are the same "more than 50 percent of the time" per § 656.17(i)(5)(ii)), and also 100 percent of the time (because the jobs are the same). The court is not persuaded by Plaintiffs' reading of the regulation. The Court finds that "more than 50 percent of the time" means 51 percent of the time and beyond, up to and including 100 percent.

Plaintiffs also place significance on the second sentence of § 656.17(i)(5)(ii), arguing that there must be a comparison of two positions because it "makes no sense to compare descriptions and organizational charts for the same position." (Filing No. 32 at p. 14.) However, the wording of the second sentence ("This requirement can be documented by furnishing position descriptions, the percentage of time spent on the various duties, organization charts, and payroll records.") suggests that it is simply providing what methods *can be* used to demonstrate whether a position is or is not substantially comparable.

11

Further, Plaintiffs' proposed definition does not match with how § 656.17(i)(3)(i) has been applied by the Department of Labor. See *Matter of Kentrox, Inc.*, 2012-PER-00038 (Bd. Alien Lab. Cert. App. May 22, 2014) (denial of certification was based on the employer failing to show that the experience was acquired in a position that was *substantially dissimilar* to the one currently being offered). See, also, *Matter of K-m-, Inc. Appeal of Nebraska Service Center Decision Form I-140, Immigrant Petition For Alien Worker,* 2018 WL 2112792, at *4 (stating "a labor certification employer cannot rely on experience that a foreign national gained with it, unless the experience was in a job substantially different than the offered position or the employer demonstrates the impracticality of training a U.S. worker for the offered position."). Therefore in the context of the Department of Labor's consideration of Plaintiffs' labor certification, § 656.17(i)(3)(i) would not apply to Wang's experience in the exact same position, as Analytics Developer at Border States.

The documents submitted reflect that Wang worked as an Analytics Developer for at least 36 months prior to the application date. However, taking the application at face value, USCIS determined that if the beneficiary did not gain any qualifying experience in a substantially comparable position (Part J.21), 36 months of experience in the job offered was required (Part H.6) and experience in an alternate occupation was not acceptable (Part H.10), then the beneficiary's experience could not qualify him for the proffered position, as it was defined in the labor certification.

The Court is sympathetic to the position this puts the Petitioner and the Beneficiary in. However, upon the independent review of this Court, USCIS' decision not to count Wang's employment as an Analytics Developer based on the plain language of the labor certification, <u>as completed by the Petitioner</u>, was not arbitrary, capricious, an abuse of discretion or otherwise contrary to the law.

Plaintiffs further assert that USCIS improperly relied on the response to J.21, and "ignore[d] the entirety of the form." (Filing No. 32 p. 11.) Specifically, plaintiffs argue that the response to Question K clearly indicates that Wang's experience at Border States was included in the "experience that qualifies the alien for the job opportunity for which the employer is seeking certification." However, Question K states: "List all jobs the alien has held during the past 3 years.

12

Also list any other experience that qualifies the alien for the job opportunity for which the employer is seeking certification." It is not arbitrary, capricious, or an abuse of discretion for the reviewing agency to read J.21 and Question K together, and determine that the experience at Border States is listed because the question asks for the prospective employee's most recent work history, and the other jobs were listed for consideration as qualifying work experience.

b. Feasibility of training a new worker

In support of its I-140 Petition, Border States argued that it was not feasible for Border States to train a worker for the Analytics Developer position. It stated the position "now requires a higher level of experience than it did at the time Mr. Wang started in the position in 2019" (Filing No. 24-3), and due to internal restructuring and changes to corporate strategy Wang is the only Analytics Developer for the whole company. (Filing No. 28 at 12).

USCIS determined that whether it is feasible to train another worker is not "under the purview of USCIS and must be addressed by the Department of Labor." (Filing No. 24-3 at 6). Plaintiffs assert that it is arbitrary for USCIS to state the feasibility of training another worker is outside of its purview, when USCIS cites the definition of "substantially comparable" set forth in the same statutory section.

20 C.F.R. § 656.17 outlines the "Basic labor certification process" and dictates how the Department of Labor will evaluate the employer's actual minimum requirements, to ensure the job requirements listed by the employer are actual and not otherwise meant to exclude U.S. workers. See *Ved v. United States Citizenship & Immigr. Servs*., No. 3:22-CV-00088-SLG, 2023 WL 2372360, at *8 (D. Alaska Mar. 6, 2023). The statute does not mention USCIS, or direct USCIS to use this criterion in determining whether the beneficiary has the requisite experience for the position offered.

Although the agency names have changed over time, the roles of the Department of Labor and U.S. Citizenship and Immigration Services have not changed. The responsibility of USCIS in regard to employer-based immigration is limited to "determining if the alien is qualified for the

13

job." *Hoosier Care, Inc. v. Chertoff*, 482 F.3d 987, 990–91 (7th Cir. 2007). And "whether the alien is in fact qualified to fill the certified job offer" is a different inquiry from "whether the qualifications set by the employer are proper, which is the responsibility of the [Department of Labor]." *Id.*, citing *K.R.K. Irvine, Inc. v. Landon*, 699 F.2d 1006 at 1008 (9th Cir. 1983); *Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305 at 1309 (9th Cir. 1984).

The Plaintiffs cited several decisions by the Board of Alien Labor Certification Appeals, but each related to an appeal or denial of the labor certification. See, *Matter of Telapprise, LLC,* 2012-PER-03255 (Bd. Alien Lab. Cert. App. June 28, 2017); *Matter of Kentrox, Inc.*, 2012-PER-00038 (Bd. Alien Lab. Cert. App. May 22, 2014). Plaintiffs do not provide any authority showing that USCIS is required to consider the feasibility of training another employee to do the job when considering whether the proposed beneficiary is qualified for purposes of an I-140 Petition.

    II.    Experience in Previous Jobs

USCIS found that based on the Petitioner's responses to Part H.6 and H.10 of the labor certification, none of Wang's previous positions could be used could be used to meet the minimum requirements for the position as an Analytics Developer. Filing No. 24-3 at pp. 5-6. Plaintiffs argue that Wang had over 36 months of experience performing the key duties of the Analytics Developer position in his previous jobs with the University of Cincinnati (Graduate Teaching Assistant), Berkley Net Underwriters (Data Analyst), Blue Cross Blue Shield (Healthcare Intelligence Analyst), and Border States (Sales and Operations Data & Segment Analyst). Petitioner argues that USCIS' Conclusion that Wang's experience in jobs other than Analytics Developer was not "experience in the job offered" is arbitrary and capricious.

Form 9089 indicates that 36 months of "experience in the job offered" was a prerequisite (Part H.6) and that "experience in an alternative occupation is not acceptable." (Part H.10). Petitioner argues that "the agency never disputed that Wang's past experience *would have been* qualifying if not for the responses to Question H.6 and Question H.10." (Filing No. 32 at pp.3-4, emphasis in original, internal quotations omitted). Petitioner is arguing that the USCIS decision was arbitrary – even though Defendants applied Petitioner's own responses, exactly as written and

submitted the Department of Labor for purposes of the labor certification and to USCIS for processing the I-140 Petition. Again, the Court cannot find that the USCIS decision arbitrary, capricious, an abuse of discretion, or otherwise contrary to the law for applying the plain language of Petitioner's own application responses.

Plaintiffs also argue the USCIS has unreasonably changed its position in this case, where it had previously indicated in its Request for Evidence (Filing No. 24-3 at 79) and its December 29, 2023 Decision (Filing No. 24-3 at 72) that Wang could qualify for the position based upon 36 months of experience as an Analytics Developer *or a substantially similar position*. (Filing No. 32 at 4). USCIS argues that their position was consistent, and that Border States failed to show during the adjudication that Wang had 36 months experience as an Analytics Developer, by relying on his previous jobs. The Request for Evidence and the December 29, 2023 Decision both note that Plaintiff's responses in J.21 (no experience gained in a substantially comparable position with the employer) and H.10 (no alternate occupation is acceptable) do not show that Wang has the requisite experience. (See Filing No. 24-3 at p 78; Filing No. 24-3 at p. 75). The USCIS' has not changed their position on their interpretation of the Labor Certification.

Plaintiffs also assert that USCIS did not adequately analyze the key duties of Wang's work experience prior to his time as an Analytics Developer for Border States. In response to the Request for Evidence, Border States asserted that Wang had "2.5 years of experience in a position that was not substantially comparable … but still counts as relevant and qualifying experience for the Analytics Developer position" as well as ten months of experience as a part-time Graduate Teaching Assistant. (Filing No. 24-3 at p. 84.) In the briefing, Plaintiffs argue that the Segment Analyst position is not substantially comparable because they "did not require performance of the same duties more than 50% of the time" (Filing No. 27 at 11; Filing No. 28 at p. 8, n. 2) but at the same time Plaintiffs argues that USCIS should have considered Wang's experience as a Segment Analyst because the "key duties" are similar enough to be considered experience in the position offered. (See Filing No. 28 at p. 8, n.2) However, Plaintiffs cannot have it both ways; the job experience prior to his Analytics Developer position cannot be both *not substantially comparable* (i.e. jobs that do not require the performance of the same job duties more than 50 percent of the

15

time), and also *substantially similar* (in order to be counted as experience in the job offered, per Part H.6).

Plaintiffs cite *27518850 Appeal of Texas Service Center Decision Form I-140, Immigrant Petition For Alien Workers (professional),* 2023 WL 4999006, a non-precedent decision of the Administrative Appeals Office, where it was stated that "experience in the job offered" means experience performing an offered position's key duties as stated on the labor certification. However, in the same paragraph of that decision, the AAO also stated:

> In general, if a Petitioner's answer to section J.21 of the labor certification is "no," then the experience with the employer may be used by the beneficiary to qualify for the proffered position, but only if: (1) the prior position was not substantially comparable to the offer position, and (2) the terms of the labor certification at section H. 10 provide that applicants can qualify through an alternate occupation.

Id. at *3. Here, as in that case, the Petitioner's answer to section J.21 was "no" and section H. 10 provides that applicants cannot qualify through an alternate occupation. Wang's 26.5 months of experience with Border States as a Segment Analyst cannot contribute to the stated minimum requirement of 36 months of experience in the job offered. And, without counting his experience as Segment Analyst, there is no combination of his work experience prior to Border States that can fulfill the requirement of 36 months of experience in the job offered.

III.     Conflict With Approval of the Labor Certification

Plaintiffs argue that Border States clearly noted that it would require 36 months of experience in the job offered, certified that Wang had the requisite experience, and listed Wang's qualifying experience on the Form 9089. (Filing No. 28 at p. 15). Plaintiffs argue it would have been impossible for Wang to qualify if his experience with Border States were not considered, and "DOL would not have approved [the labor certification], or at least would have raised questions during its review." (Filing No. 28 at p. 15.) This is similar to the argument Petitioner made in *In 27518850 Appeal of Texas Service Center Decision Form I-140.* The Administrative Appeals Office noted that "Petitioner's assertion that USCIS should defer to DOL's labor certification as evidence that the Beneficiary meets the minimum requirements for the position is not persuasive."

16

*Id.* Rather, the approved labor certification is a finding by the DOL that "there are insufficient U.S. workers who are able, willing, qualified, and available for the offered position and that employing a foreign national in the position will not adversely affect the wages and working conditions of domestic workers similarly employed." *Id.* While the DOL has denied labor certifications "when the application on its face fails to show that the foreign worker met the minimum qualifications described in the application," (*In re Marvell Semiconductor Inc.,* 2020 WL 5889121, at *3 (Bd. Alien Lab. Cert. App., Feb. 27, 2020)), it is ultimately the USCIS' job to determine whether the Beneficiary has the requisite experience. Thus, Plaintiffs' argument that the labor certification would not have been approved if Wang lacked the requisite experience is unpersuasive.

Upon review, USCIS's decision to deny Wang's I-140 immigration petition must be upheld as it is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Accordingly,

IT IS ORDERED:

1. Plaintiffs' Motion for Summary Judgment (Filing No. 26) is denied.

2. The Cross Motion for Summary Judgment (Filing No. 30) filed by the United States Citizenship and Immigration Services, and Ur M. Jaddou, is granted.

3. A separate judgment will issue.

Dated this 27th day of September, 2024.

BY THE COURT:

*Susan M. Bazis*
Susan M. Bazis
United States District Judge